**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MICHAEL ANTHONY MENCHACA,
Petitioner,
vs.
DOMINGO URIBE, Jr., Warden,
Respondent.

CASE NO. CV 09-04289 RSWL (RZ)

REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California, the undersigned submits this Report and Recommendation to the Honorable Ronald S.W. Lew, Senior United States District Judge. The undersigned recommends that the Court deny the Petition and dismiss the action with prejudice.

**I.**

On February 25, 2005, a Los Angeles County Superior Court jury convicted Petitioner Michael Anthony Menchaca of six counts of second degree robbery, three counts of attempted second degree robbery, and eight counts of assault with a firearm; the jury found Petitioner personally used a firearm in the robberies and attempted robberies (*see* CAL. PENAL CODE §§ 211, 664/211, 245(a)(2), 12022.53(b)). (Clerk's Transcript ("CT")

338-64; Reporter's Transcript ("RT") 2704-11.) The trial court sentenced Petitioner under California's Three Strikes law to 57 years in state prison. (CT 410-33; RT 3018-37.) The California Supreme Court denied review on January 17, 2007. (Lodgment No. 8.) The state courts also denied habeas review. (*See* Lodgment Nos. 9-11.)

On June 16, 2009, Petitioner filed in this Court the present Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. The Court assesses the Petition pursuant to the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which provides in part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. Under the AEDPA, a federal court shall presume that a determination of factual issues made by a state court is correct, and a petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**II.**

The California Court of Appeal found the following facts underlying Petitioner's convictions:

*(i) The robberies.*

On the evening of April 17, 2004, between approximately 10:30 and 11:00 p.m., [Petitioner], apparently assisted by another man, committed a series of robberies and attempted robberies in Hollywood. [Petitioner's] first victim was Mitchell Schwartz, who was taking a walk . . . when [Petitioner] pointed a gun at him and demanded money. When Schwartz informed [Petitioner] that he had none, [Petitioner] departed. Rodrigo Vazquez, who was sitting in a parked car talking on his cellular telephone, had noticed [Petitioner] acting suspiciously during the half hour before the robbery. He observed that a white Toyota appeared to be coordinating its movements with [Petitioner's]. Vazquez recorded the vehicle's license plate number. After learning that [Petitioner] had attempted to rob Schwartz, Vazquez provided the plate number to police.

At approximately 10:33 p.m., Jeff Safran was walking from his car to his house near the area where the Schwartz robbery occurred. [Petitioner] displayed a gun and demanded Safran's money. Safran gave him $53.

At approximately 10:39 p.m., Megahn Perry was walking from her car to an apartment . . . . [Petitioner] pointed a gun at Perry and demanded her money . . . . [Petitioner] ran off after Perry gave him approximately $6 from her wallet.

At approximately 10:47 p.m., Jonathan Schlossberg was walking from his car when [Petitioner] approached from behind, pointed a gun at Schlossberg, and demanded Schlossberg's money. Schlossberg opened his wallet and placed it on the

ground, and emptied his pockets. [Petitioner] removed $120 from the wallet.

At approximately 10:50 p.m., Rebecca Hames parked her car . . . . As she was removing bags from the back seat, she turned to find [Petitioner] pointing a gun at her and demanding her money . . . . [Petitioner] walked away after Hames gave him $12.

At approximately 10:50 p.m., Danielle Horwich, Amber Young, and Celso Santiago walked from Horwich's house to her car . . . . [Petitioner] approached the group and demanded Santiago's money. Santiago stated that he had none. [Petitioner] then pointed a gun at Horwich and demanded her money. . . . Horwich took $50 in cash from the wallet and gave it to him. [Petitioner] then pointed the gun at Young, who was seated in Horwich's car, and demanded her money. Young was unable to find her purse.

[Petitioner] crossed the street and robbed Christopher Donahue, who was walking home from the Indigo Restaurant with his girlfriend and another woman. As Donahue's group neared his apartment . . ., [Petitioner] jumped from between some parked cars, pointed a gun at Donahue, and demanded Donahue's money. Donahue gave [Petitioner] approximately $35 to $50 in cash that was wrapped up with his Indigo Restaurant and other receipts. [Petitioner] took the money and ran.

The Schwartz, Safran, and Perry robberies occurred in an area located within a mile of the other robberies.

*(ii) [Petitioner's] arrest.*

Alerted by the victims' 9-1-1 calls and acting on the description of the white Toyota, police initiated a felony traffic stop. As officers approached the Toyota, [Petitioner] exited from the passenger side. Another man was driving. [Petitioner] initially walked toward the officers but then ran past them. He was wearing a black jacket and dark pants. Officers followed [Petitioner] and established a perimeter. They discovered a loaded .9-millimeter magazine on the ground and a handgun hidden behind a bag of fertilizer in a yard [Petitioner] had run through. [Petitioner] was discovered approximately two hours after a police dog joined the search, hiding underneath a car. He had approximately $202 in his pants pocket, "wadded together" with Donahue's receipts from a video store and the Indigo Restaurant. The Toyota was discovered parked in a driveway later that evening. In the Toyota's front passenger area, officers found a black "L.A." baseball cap and a black bandanna.

*(iii) Identification evidence.*

Schwartz and Vazquez positively identified [Petitioner] as the robber in a field show-up and at trial. Safran identified [Petitioner] as the robber in a pretrial six-pack photographic lineup and at trial. Schlossberg tentatively identified [Petitioner] as the robber at a field show-up and at trial, indicating he was 75 percent sure of his identification. Hames was unable to make a photographic identification or an identification at trial, but tentatively identified [Petitioner] as the robber in a live lineup at

the police station. Perry, Young, Horwich, and Donahue were unable to make identifications. Santiago did not testify.

The victims and witnesses generally described the robber's attire as a Dodgers or dark baseball cap, a dark jacket, and a dark blue or black bandanna over his face. Donahue identified the jacket retrieved by police as the one worn by the robber. Vazquez, who had seen the robber without the bandanna covering his face, testified that the robber had a goatee. [Petitioner] had a goatee at the time of the robbery.

* * *

*b. Defense case.*

[Petitioner] testified in his own behalf, as follows. On the night of the robberies, [Petitioner] borrowed his girlfriend's car because an acquaintance named David had asked if [Petitioner] could give him a ride to pick up money from a cousin in Hollywood. [Petitioner] had met David at a hamburger stand, knew David from the neighborhood, and said "hi" when David occasionally passed by [Petitioner's] house. He did not know David's last name, where David lived, or any of David's relatives.

David told [Petitioner] where to drive. When they arrived at Second and Sycamore, David exited the car and stated that he would be right back. David did not return for approximately 30 minutes. When David returned he asked to borrow [Petitioner's] jacket, and [Petitioner] agreed. David stated that he had not obtained the money from his cousin. He left the car again and returned approximately 10 minutes later, stating that he had obtained the money. David then asked [Petitioner] to take him

> to another location where another individual owed him money. [Petitioner] complied, and David exited the car. David returned a few minutes later holding a gun and wearing a bandanna over his face. David asked to drive, and [Petitioner] obliged. David returned the jacket and [Petitioner] put it on. [Petitioner] asked what was going on, and David replied that he had "f'ed up." [Petitioner] stated, "Just tell me you didn't shoot anybody, did you?"
>
> David drove rapidly away. When a police car made a U-turn nearby, David told [Petitioner] to run. [Petitioner] initially refused, but then reconsidered. [Petitioner] put the gun in his jacket pocket, told David not to crash the car, and exited. [Petitioner] began walking toward the officers. He then panicked because he did not wish to return to jail, and ran. The clip came off the gun as he ran. He threw the gun into a backyard. He hid from police until he was discovered and arrested.

(Lodgment No. 7, at 2-5.)

## III.

Petitioner's first claim is that the admission of evidence of his 1995 robbery conviction violated his due process rights. (Petition, at 5.) The trial court allowed the introduction of the evidence to impeach Petitioner's credibility per California Evidence Code section 788.[1] (*See* RT 8-12; 1841.) The judge instructed the jury about the limited

---

[1] California Evidence Code section 778 provides in relevant part: "For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony."

purpose of the evidence; it was to be used solely in their consideration of Petitioner's credibility. (RT 2494-95; CT 301.) The California Court of Appeal found that the trial court properly allowed the introduction of the evidence for this limited purpose. (Lodgment No. 7, at 6-9.)

The question for this Court is "not whether introduction of [the evidence] violated state law evidentiary principles, but whether the trial court committed an error which rendered the trial so arbitrary and fundamentally unfair that it violated federal due process." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (quotation omitted). As the Supreme Court has explained, "the category of infractions that violate 'fundamental fairness' is a very narrow one." *Estelle v. McGuire*, 502 U.S. 62, 72-73, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). The admission of relevant evidence will not violate due process, *id.*, 502 U.S. at 68-69, and "[o]nly if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process." *Jammal*, 926 F.2d at 920 (emphasis in original). Here, the evidence of Petitioner's prior crimes was properly admitted under state law to impeach his credibility. Because the evidence was relevant, its introduction did not violate due process. *Id.*

And, even if the evidence also proved Petitioner's propensity to commit robberies (although the jury was instructed not to use it for this purpose), its introduction did not violate clearly established Supreme Court authority. "The Supreme Court has expressly reserved the question of whether using evidence of the defendant's past crimes to show that he has a propensity for criminal activity could ever violate due process." *Larson v. Palmateer*, 515 F.3d 1057, 1066 (9th Cir.) (*citing Estelle*, 502 U.S. at 75, n. 5), cert. denied, __ U.S. __, 129 S. Ct. 171, 172 L. Ed. 2d 123 (2008); *Alberni v. McDaniel*, 458 F.3d 860, 866 (9th Cir. 2006). Therefore, habeas relief is not warranted. 28 U.S.C. § 2254(d); *Carey v. Musladin*, 549 U.S. 70, 77, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006) (holding that habeas relief is not available where Supreme Court has left an issue an open question of law).

**IV.**

Petitioner's second claim is that the trial court violated his due process rights when it refused to admit evidence of David's statements to Petitioner. (Petition, at 5.) In fact, the court allowed Petitioner to testify about many of David's statements to him, but sustained its own or the prosecutor's objections to some of Petitioner's answers. (*See e.g.* RT 1854-56.) The California Court of Appeal denied this claim because it found that the trial court allowed a good portion of the testimony even though it appeared to be "classic hearsay" and thus inadmissible, and because any error in excluding a small portion of the testimony was harmless. (Lodgment No. 7, at 9-10.)

"[T]he Constitution guarantees the accused a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986) (quotation omitted); *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006). However, "[t]he accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988). The Supreme Court has found "the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998); *accord Holmes*, 547 U.S. at 324-25. Only in a limited context has the Supreme Court found that the exclusion of evidence violates due process – cases in which the excluded evidence is both highly reliable and relevant to the defense or where the application of the evidentiary rule in question is not rationally related to its intended purpose. *Holmes*, 547 U.S. at 324-25; *Green v. Georgia*, 442 U.S. 95, 97, 99 S. Ct. 2150, 60 L. Ed. 2d 738 (1979); *Chambers v. Mississippi*, 410 U.S. 284, 300-302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973).

Petitioner cannot show that the trial court's rulings were an infringement of his constitutional rights. As the California Court of Appeal held, the trial court allowed Petitioner to testify about many of David's alleged statements to Petitioner, negating any

claim that Petitioner was unable to present his defense to the jury. The few additional statements that Petitioner would have wanted to testify to (*see* Traverse, at 10) were not in any way necessary for the jury to understand Petitioner's defense and, given the overall circumstances, were not highly reliable. Because Petitioner was able to present his defense and was not prevented from offering reliable, admissible evidence, Petitioner has not shown that the state courts' denial of this claim was an unreasonable application of Supreme Court authority. 28 U.S.C. § 2254(d); *Holmes*, 547 U.S. at 324-25; *Green*, 442 U.S. at 97; *Chambers*, 410 U.S. at 300-02.

**V.**

Petitioner's third claim is that the trial court incorrectly instructed the jury about the rationale for the hearsay rule. (Petition, at 6.) As the California Court of Appeal explained,

> Just prior to admitting [Petitioner's] testimony about David's statements, the trial court stated: "[T]here's a hearsay rule which says that you can't bring in evidence about what someone said unless they're here to be cross-examined, *because if they're not here, you don't know whether – you don't have the ability to see and test yourself whether they said it.* [¶] But there's another rule that says sometimes we allow hearsay in, not for the truth of the matter, not that what was being said is true, but as to its impact on the hearer of the information, what did the hearer do as he heard this information. [¶] Now, I know this may sound complicated, and I know you didn't go to law school, but, anyway, I'm leading up to the fact that I'm going to be letting some hearsay in now. I am not allowing it in for the truth that what is being said about this other person who may or may not

> have said these things is true, but I'm letting it in for the small, limited – I should not say 'small' – the limited impact on the hearer of the information, and I believe that is the witness, and what he may have done as a result of hearing that information."

(Lodgment No. 7, at 11 (italics added by appellate court).) The Court of Appeal agreed that the rationale stated by the trial court was incorrect; hearsay is generally excluded because the jury cannot judge the credibility of the declarant, not because the jury cannot judge whether the declarant made the statement at all. (*Id.*)

The Court of Appeal denied this claim because Petitioner could not demonstrate prejudice. (*Id.*, at 12.) It noted that any instructional error was minimal and that the court correctly instructed the jurors they could consider David's reported statements for their impact on Petitioner. (*Id.*) Finally, the court found that the evidence against Petitioner was overwhelming, negating the prejudice from any instructional error. (*Id.*)

A claim of instructional error warrants habeas relief only where the challenged instruction, "by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72 (quotation omitted). An instruction to a jury "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Id.* (quotation omitted). The Supreme Court has "defined the category of infractions that violates 'fundamental fairness' very narrowly." *Id.*, 502 U.S. at 72-73 (quotation omitted). Here, because the state court made an express finding that any error was harmless, Petitioner would be entitled to relief only if he could show that the state court determination of harmlessness was objectively unreasonable pursuant to AEDPA standards, and that the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Inthavong v. Lamarque*, 420 F.3d 1055, 1059 (9th Cir. 2005); *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993).

Petitioner's claim meets none of the above standards. Any error was technical; it did not directly concern the admission of the evidence for its limited purpose. Moreover, the jury properly was instructed about the basis for the hearsay rule (*i.e.*, hearsay is excluded because the jury cannot judge the declarant's credibility), at another point in the trial. (*See* RT 2122.) Finally, as reasonably found by the state courts, the evidence against Petitioner was overwhelming. The identifications were consistent to small details and Petitioner's story about why he ran from the police – after taking the jacket and gun from David – was unbelievable. Moreover, the police testified that they found the stolen money in Petitioner's pants pocket (RT 1624-27); he had no explanation for this. Therefore, the state courts reasonably could find either that any error did not render the trial fundamentally unfair or that any error did not have a substantial effect on the jury verdict. *Estelle*, 502 U.S. at 72; *Inthavong*, 420 F.3d at1059; *Brecht*, 507 U.S. at 637. Habeas relief is not warranted. 28 U.S.C. § 2254(d).

**VI.**

Petitioner contends next that the trial court was biased against him, as demonstrated by the court's questions to Petitioner and comments the court made about Petitioner's testimony. (Petition, at 6.) In his traverse, Petitioner suggests that the court's bias was shown by the court telling the jury the wrong basis for the hearsay rule, the court allowing Petitioner to testify about only some of David's statements, the court sustaining its own hearsay objection to a portion of Petitioner's testimony, and the court telling the jury to disregard Petitioner's statements. (Traverse, at 15-16.) The last two occurred after Petitioner continued to testify about David's hearsay statements which would have been relevant only for their truth; the judge sustained his own objection and told the jury to disregard what Petitioner had just testified to as it was not relevant for its effect on Petitioner. (*See* RT 1854-56.)

The California Court of Appeal found this claim waived and meritless. (Lodgment No. 7, at 13-15.) Setting aside any procedural default,[2] Petitioner cannot show that the state courts unreasonably denied this claim. A defendant may demonstrate judicial bias where he shows that a judicial opinion derived from an extrajudicial source or where the judge displayed "such a high degree of favoritism or antagonism as to make fair judgment impossible," *Liteky v. United States*, 510 U.S. 540, 555-56, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994), and must show that the judge's behavior "rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d 734, 740-41 (9th Cir. 1995). "[J]udicial rulings alone almost never" demonstrate judicial bias. *Liteky*, 510 U.S. at 555.

Petitioner here shows nothing more than adverse judicial rulings, all of which appear correct under state law (with the exception of the hearsay instruction discussed above, which was technically incorrect in one limited aspect). (*See* Lodgment No. 7, at 14.) Moreover, the court's asking of limited, relevant questions and sustaining its own objections did not render the trial fundamentally unfair. *Liteky*, 510 U.S. at 555-56. The state courts reasonably denied this claim. 28 U.S.C. § 2254(d).

**VII.**

Petitioner argues that he suffered ineffective assistance of counsel in four instances: (1) counsel did not introduce fingerprint evidence; (2) counsel did not object to evidence of items found in the car; (3) counsel did not challenge a juror; and (4) counsel did not object to the prosecutor's questions and argument that Petitioner lied. (Petition, at

---

[2] The Court may consider the merits of a potentially defaulted claim where it is in the interests of efficiency to do so. *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S. Ct. 1517, 137 L. Ed. 2d 771 (1997) ("We do not mean to suggest that the procedural bar issue must invariably be resolved first; only that it ordinarily should be."); *Walters v. Maass* , 45 F.3d 1355, 1360 n.6 (9th Cir. 1995) (noting that where a claim fails on the merits, interests of comity and judicial economy may be better served by addressing the claim on the merits).

6, Att. A, at 13-25.) The state courts denied these claims on habeas review. (Lodgment Nos. 9-11.)

In order to demonstrate ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient, and that the deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Petitioner bears the burden of establishing both components. *Id.* Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002). Under *Strickland*, counsel's deficient performance prejudices a petitioner where there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Petitioner argues that counsel should have introduced evidence that there was a fingerprint found on the gun which did not match his. (Petition, Att. A, at 13-17.) It is not at all clear that this assertion is factually accurate; what can be seen from the record is that a photograph was taken of a latent fingerprint on the gun. (*See* RT 3011, Petition, Att. A, Exh. A.) But defense counsel used to his advantage the fact that no fingerprint evidence was admitted and argued to the jury that this suggested Petitioner did not use the gun. (*See* RT 2467-68.) Petitioner relies on nothing more than speculation to impugn what appears to have been a reasonable tactic employed by his attorney. As the state courts reasonably found (*see* Lodgment No. 9, at 2), this does not demonstrate ineffective assistance of counsel. *See e.g. Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001) (finding no ineffective assistance of counsel where petitioner did "nothing more than speculate that, if interviewed," a witness might have given helpful information).

Next, Petitioner argues that counsel should have objected to the introduction of evidence about unrelated items found in the trunk of the car from which he committed the robberies. (Petition, Att. A, at 17-20.) This claim is not supported by any logical

argument; the items described by Petitioner were unrelated to the crimes and therefore their introduction did not indicate his guilt. He has not demonstrated any prejudice. *Strickland*, 466 U.S. at 694.

Third, Petitioner contends that counsel should have excused a juror who initially indicated that he thought police don't lie or make mistakes in arresting the wrong person. (Petition, Att. A, at 20-22.) As the state court noted, "the juror was properly rehabilitated as he indicated police could make mistakes." (Lodgment No. 9, at 3.) Petitioner's vague, speculative assertions do not show that counsel's action in this regard either was unreasonable or prejudiced the defense. *Strickland*, 466 U.S. 668.

Finally, Petitioner faults counsel for failing to object to the prosecutor's questioning of Petitioner and closing argument in which he called Petitioner's testimony a lie. (Petition, Att. A, at 23-25; *see e.g.* RT 2403.) This claim is meritless. The prosecutor did not commit misconduct in questioning Petitioner about the veracity of his story or in challenging the credibility of the defense. *See e.g. Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996) ("Counsel are given latitude in the presentation of their closing arguments, and courts must allow the prosecution to strike hard blows based on the evidence presented and all reasonable inferences therefrom." (quotation omitted)). Counsel was under no obligation to object to the prosecutor's questions or comments. *Juan H. v. Allen*, 408 F.3d 1262, 1273-74 (9th Cir. 2005) (holding that counsel cannot have been ineffective for failing to raise a meritless objection).

Petitioner's ineffective assistance of counsel claims reasonably were rejected by the state courts. 28 U.S.C. § 2254(d); *Strickland*, 466 U.S. 668.

**VIII.**

Petitioner's final claim is that he was prejudiced by the cumulative effect of errors at his trial. (Petition, at 6b.) Although the Ninth Circuit has held that it is clearly established Supreme Court authority that the cumulative effect of multiple trial-type constitutional errors may render a defendant's trial constitutionally infirm even if the

errors, considered individually, would not be considered harmful, *Parle v. Runnels*, 505 F.3d 922, 928-29 (9th Cir. 2007), here the Court has not found that any, or certainly not multiple, constitutional errors occurred in Petitioner's trial. Therefore there was no cumulative prejudice to Petitioner's rights. This claim does not merit habeas relief. 28 U.S.C. § 2254(d).

## IX.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that the District Court issue an Order: (1) accepting the findings in this Report; and (2) directing that judgment be entered denying the Petition and dismissing the action with prejudice.

DATED: June 30, 2010

RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE